UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-21796-BLOOM/Otazo-Reyes

DOMINICANA RENOVABLES, S.L.,

Petitioner,
v.

THE DOMINICAN REPUBLIC,

Respondent.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon the following submissions relating to an Arbitration Award ("Award") [D.E. 16-1]:

(1) Dominicana Renovables, S.L.'s ("Petitioner" or "Dominicana") Petition to Confirm in Part and Set Aside in Part Arbitral Award (hereafter, "Petition") [D.E. 1]; and

(2) The Dominican Republic's ("Respondent" or "Dominican Republic") Cross-Motion to Confirm Arbitration Award in its Entirety (hereafter, "Cross-Motion to Confirm Award") [D.E. 24].

These matters were referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Beth Bloom, United States District Judge [D.E. 30].  The undersigned held a hearing on these matters on October 1, 2021.  See Paperless Minute Entry [D.E. 41].  For the reasons stated below, the undersigned respectfully recommends that the Petition be DENIED and that the Cross-Motion to Confirm Award be GRANTED.

## BACKGROUND

This dispute arose from a Concession Agreement between the Dominican Republic and Petitioner to develop and operate a wind energy complex in that country.  See Award [D.E. 16-1

1

¶ 96]. The Concession Agreement is governed by Dominican law and contains an arbitration clause providing for disputes to be arbitrated under the International Chamber of Commerce ("ICC") Arbitration Rules in Miami, FL. Id. ¶ 23.

Dominicana is "incorporated under the laws of the Kingdom of Spain, [and is] duly registered in the Dominican Republic as a foreign company". Id. ¶ 2. The Concession Agreement referenced the negotiation and execution of a Power Purchase Agreement ("PPA") between Petitioner and the state-owned energy company, the Dominican Corporation of State Electric Companies (referred to in the Award, and hereafter, by its Spanish Acronym, "CDEEE"). However, the CDEEE ultimately did not execute a PPA with Petitioner and informed Petitioner of this decision on April 29, 2016. See id. at 2, 30, 219.[1]

On January 16, 2018, Dominicana commenced arbitration proceedings by submitting a Request for Arbitration to the ICC. Id. ¶ 10. After conducting an evidentiary hearing from June 8 to 15, 2020, a three-person Arbitral Tribunal (hereafter, "Tribunal") issued the Award on January 20, 2021, which was served on the parties by the ICC on January 22, 2021. See id. ¶ 74; see also Petition [D.E. 1 ¶ 32]. The Tribunal found that: the CDEEE had breached the Concession Agreement by failing to negotiate and execute a PPA with Dominicana; the Dominican Republic was liable for the breach and was required to pay Petitioner its initial investment of $2,343,832.39 plus interest from the commencement of the arbitration proceedings on January 16, 2018, administration costs of the arbitration, and 10% of Petitioner's legal fees; and Dominicana had failed to establish its lost profits claim under Dominican law. See Award [D.E. 16-1 ¶¶ 501-981].

On February 22, 2021, the Dominican Republic filed a request for modification of the Award under Article 36(2) of the ICC Arbitration Rules to correct arithmetic errors in the portion

---

[1] The page citations [D.E. 16-1 at __] are to the Award pages rather than the court record pages.

of the Award granting Petitioner compensatory damages. See Addendum dated April 23, 2021 (hereafter, the "Addendum") [D.E. 16-2 ¶¶ 13, 17–29]. [2] Dominicana opposed the request and did not file its own request for modification or correction of the Award. See id. ¶ 15. In the Addendum, the Tribunal granted in part and denied in part the request for modification, concluding that "two immaterial typographical errors were actually incurred, which do not affect the conclusion reached by the Tribunal regarding the amount to be compensated by the Dominican Government to Dominicana Renovables." See id. ¶ 48, 54.

On May 11, 2021, Dominicana filed its Petition seeking to confirm the Award in part and to set aside the portion of the Award rejecting its claim for lost profits. See Petition [D.E. 1]. On July 20, 2021, the Dominican Republic filed its Cross-Motion to Confirm Award requesting that the Award be confirmed in its entirety. Relying on the Florida International Commercial Arbitration Act ("FICAA"), Petitioner argues that the portion of the Award denying its lost profits claim should be set aside because the arbitration agreement required a "reasoned award" and "the Tribunal failed to provide "the detailed listing or mention of expressions or statements offered as justification" for the denial of lost profits. See Petition [D.E. 1 at 5, 6, 8]. Relying on the Federal Arbitration Act ("FAA") and Eleventh Circuit precedent, the Dominican Republic argues that: the Petition is untimely under the FAA because Dominicana did not serve it within three months after delivery of the Award; and, in any event, the Tribunal issued a "reasoned award" on Dominicana's lost profits claim. See Cross-Motion to Confirm Award [D.E. 24 at 8, 9]. The Dominican Republic

---

[2] Article 36 of the ICC Arbitration Rules governs the correction and interpretation of arbitral awards due to "a clerical, computational or typographical error" in the award and "must be made to the Secretariat within 30 days from receipt of the award by such party." See ICC Arbitration Rules, Art. 36(1)-(2). The ICC Rules can be found at *ICC Rules of Arbitration*, INT'L CHAMBER OF COMMERCE, http://www.iccwbo.org/products-and-services/arbitration-and-adr/arbitration/icc-rules-of-arbitration/ (last visited Feb. 7, 2022). Under Article 36(3) of the ICC Arbitration Rules, "A decision to correct or to interpret the award shall take the form of an addendum and shall constitute a part of the award." Id.

further argues that, because there are no grounds to set aside the Award, it must be confirmed in its entirety. See id. at 39.

### RELEVANT LAW

*1. The FAA*

In 1970, the United States acceded to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or "Convention"), which established a "strong presumption in favor of arbitration of international commercial disputes" and created "original federal subject-matter jurisdiction over any action arising under the Convention." Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1440 (11th Cir. 1998). "The New York Convention is codified under Chapter 2 of the Federal Arbitration Act ('FAA'), 9 U.S.C. §§ 201–08, and applies to 'non-domestic' arbitral agreements and awards." Bamberger Rosenheim, Ltd., (Israel) v. OA Dev., Inc., (U.S.), 862 F.3d 1284, 1288 (11th Cir. 2017) (citing Indus. Risk Insurers, 141 F.3d at 1440)). Arbitral awards are non-domestic when they were made "within the legal framework of another country, e.g., pronounced in accordance with foreign law" or "when one of the parties to the arbitration is domiciled or has its principal place of business outside of the United States." Indus. Risk Insurers, 141 F.3d at 1440 (quoting Bergesen v. Joseph Muller Corp., 710 F.2d 928, 932 (2d Cir. 1983)).

"When reviewing an arbitration award, 'confirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmations or grounds for refusal to confirm.'" Chelsea Football Club Ltd. v. Mutu, 849 F. Supp. 2d 1341, 1344 (S.D. Fla. 2012) (quoting Zeiler v. Deitsch, 500 F.3d 157, 169 (2d Cir. 2007)). Thus, "a district court must confirm an arbitration award under the Convention, unless one of the seven enumerated defenses in Article

V apply." Sural (Barbados) Ltd. v. Gov't of the Republic of Trinidad and Tobago, No. 1:15-cv-22825-KMM, 2016 WL 4264061, at *2 (S.D. Fla. Aug. 12, 2016).  The party seeking to set aside the arbitral award has the "heavy burden of proving that one of the seven defenses applies." Id. (citation omitted). Moreover, a party seeking to vacate, modify, or correct an arbitral award must serve the motion to vacate, modify, or correct the award "within three months after the award is filed or delivered."  See 9 U.S.C. § 12.

2. *FICAA*

The requirements for setting aside an arbitration award under the FICAA are similar to those in the FAA.  See Sural, 2016 WL 4264061, at *6 n.4 (noting that FICAA "effectively mirrors the limited grounds to refuse enforcement in the New York Convention") (citation omitted).  Thus, the FICAA is "best construed as a gap filler to the Convention for a federal court sitting in a primary jurisdiction." Id.

The FICAA provides, in pertinent part:

(1) Recourse to a court against an arbitral award may be made only by an application to set aside an arbitral award pursuant to subsections (2) and (3).

(2) An arbitral award may be set aside by the court . . . only if:

(a) The party making the application furnishes proof that:

1. A part to the arbitration agreement defined in s. 684.003(1)(c) was under some incapacity or the arbitration agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of this state;

2. The party making the application was not given proper notice of the appointment of an arbitrator or of the arbitral proceedings or was otherwise unable to present its case;

3. The award deals with a dispute not contemplated by or not falling within the terms of the submissions to arbitration, or contains decisions on matters beyond the scope of the submission to arbitration . . . .; or

5

    4.    The composition of the arbitral tribunal or the arbitral procedure was not in accordance with the agreement of the parties

. . .

(3) An application to set aside an arbitral award may not be made after 3 months have elapsed after the date on which the party making that application receives the award or, if a request had been made under s. 684.0044, after 3 months have elapsed after the date on which that request has been disposed of by the arbitral tribunal.

See Fla. Stat. §§ 684.0046 (1), (2), (3).

Section 684.0044 governs requests to the arbitral tribunal to correct an award due to errors in computation or any typographical errors and requires the party seeking correction to make such request within 30 days after receipt of the award. See Fla. Stat. § 684.0044 (1)(a)(1). Section 684.0042 (2), titled "Form and contents of award", provides that "[t]he award shall state the reasons upon which it is based, unless the parties have agreed that no reasons are to be given . . . ." See Fla. Stat. § 684.0042 (2).

## DISCUSSION

### 1. *The Petition is untimely.*

Chapter 2 of the FAA applies to arbitral awards pronounced according to foreign law or when one of the parties to the arbitration is domiciled outside of the United States. Bamberger Rosenheim, 862 F.3d at 1288. Here, the Award was pronounced in accordance with Dominican law and both of the parties involved are domiciled outside of the United States. See Award [D.E. 16-1 ¶¶ 2, 23]. Thus, the FAA applied to the Award.

Petitioner argues that the FICAA should apply in this case as a "gap filler" to the FAA because the FAA is "silent" "concerning deadlines for petitions to set aside when there is a correction or modification filed." See Petitioner's Opposition to Cross-Motion to Confirm Award (hereafter, "Opposition") [D.E. 27 at 14]. Under this "gap filler" theory, Dominicana's May 11,

6

2021 Petition would be timely because it was filed less than three months after the Tribunal's issuance of the Addendum on April 23, 2021. See Fla. Stat. § 684.0046 (3) (allowing a 3-month interval between disposition of a request that the arbitral tribunal correct an award under Section 684.0044 and the filing of an application to set aside the award).

However, under the explicit terms of Section 684.0046, the alternative 3-month interval for filing a request to set aside an award applies to correction requests made under Section 684.0044. Here, the Dominican Republic's request to correct arithmetic errors was made pursuant to Article 36 of the ICC Arbitration Rules, which were the applicable rules for the arbitration. See Addendum [D.E. 16-3 ¶¶ 30-32]; Award [D.E. 16-1 at 5, ¶ 23]. Thus, the "gap filling" function of the FICAA is inapplicable here.

Pursuant to the FAA, Petitioner had three months to serve its Petition starting from the date the Award was delivered to the parties on January 22, 2021. See 9 U.S.C. § 12. Petitioner did not file its Petition until May 11, 2021, more than three months after the Award was delivered. See Petition [D.E. 1]. Thus, the Petition is untimely under the FAA. Nevertheless, the undersigned will address Dominicana's challenge to the denial of its lost profits claim. Finding no merit in that argument, the undersigned respectfully recommends that the Court grant the Dominican Republic's request for the Award to be confirmed in its entirety.

2. *The Tribunal issued a lost profits "reasoned award".*

Petitioner argues that the Award should be partially set aside as to the denial of its lost profits claim because: the Tribunal did not issue a reasoned award; thus, the arbitration procedure was not carried out in accordance with the agreement of the parties as mandated by Section 684.0048(1)(a)(4) of the FICAA. See Petition [D.E. 1 at 12, 13, 16–18]. As noted above, the requirements for setting aside an arbitration award under the FICAA are similar to those in the

7

FAA; and the FICAA "effectively mirrors the limited grounds to refuse enforcement in the New York Convention". See Sural, 2016 WL 4264061, at *6 n.4.  Therefore, the undersigned addresses this contention in the context of the FAA.

Article V(1)(d) of the New York Convention provides, in relevant part, that recognition and enforcement of an arbitral award may be refused if "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties." See THE NEW YORK CONVENTION, ARTICLE V, http://www.newyorkconvention1958.org (last visited Feb. 8, 2022).  According to Petitioner, Article 32(2) of the agreed upon ICC Arbitration Rules, which states that "the award shall state the reasons upon which it is based," provides support for its contention that the Tribunal did not issue a sufficiently reasoned Award.  See Petition [D.E. 1 ¶ 48] (quoting ICC Arbitration Rules, Art. 32(2)).  Both parties rely on Cat Charter, LLC v. Schurtenberger, 646 F.3d 836 (11th Cir. 2011) for the standard that applies to a determination of what constitutes a "reasoned award".  Compare Petition [D.E. 1 ¶¶ 1, 8, 47, 50] with Cross-Motion to Confirm Award [D.E. 24 at 8, 18].

In Cat Charter, the Eleventh Circuit explained that "the varying forms of awards may be considered along a spectrum of increasingly reasoned awards, with a standard award requiring the least explanation and findings of fact and conclusions of law requiring the most." Cat Charter, 646 F.3d at 844 (citations omitted) (internal quotations omitted).  Thus, "a reasoned award is something short of findings and conclusions but more than a simple result." Id.  Accordingly, the Eleventh Circuit held that "a reasoned award is an award that is provided with or marked by the detailed listing *or mention of* expressions or statements offered as a justification of an act—the act here being, of course, the decision of the Panel." Id. (emphasis in original) (internal quotations omitted).

A review of the Award confirms that it meets the Cat Charter standard for a "reasoned award". The Tribunal devoted nearly 40 pages to its summary and analysis of the parties' respective arguments concerning damages. See Award [D.E. 16-1 ¶¶ 233–82, 461–97, 899–967, 981]. The Tribunal analyzed Petitioner's "estimates of damages" for lost profits according to two valuation methods presented by Petitioner's damages expert and set forth its detailed "Decision," which is comprised of multiple sub-parts, in paragraph 981. See id. ¶¶ 899-967, 981. Noting that Dominican law requires "both current and future damages" to be "certain", the Tribunal found that Petitioner had not met this burden, stating:

> In this regard, as mentioned above, Dominican law requires that the damage be so certain that it can be compensated. In that vein, the Tribunal cannot order compensation for future damages if they are contingent or hypothetical.
>
> For this reason, given the embryonic nature of the Project, it is not possible for the Tribunal to conclude that La Isabella Park would have been carried out in the hypothesis that the CDEEE had granted the PPA Contract to Claimant.
>
> In this sense, the Tribunal agrees with the [Dominican Republic] that it is not possible to recognize the income from the operation of the Park, that it is, the loss of profits claimed by Dominicana Renovables, because it is not possible to demonstrate that its construction was guaranteed.
>
> Consequently, the Tribunal will only recognize the net investment made by Dominicana Renovables to the extent explained in the following section.

Id. ¶¶ 950–53. The Tribunal then outlined a timeline of the events leading up to what it deemed was the Dominican Republic's breach of the Concession Agreement, its valuations for Petitioner's initial investment, arbitration costs, and fees, and its ultimate award of these damages to Petitioner, which excluded Petitioner's claim for lost profits. See id. ¶¶ 954–81.

The foregoing statements indeed provide a "detailed listing *or mention of* expressions or statements offered as a justification" for the denial of Dominicana's lost profits claim. Cat Charter, 646 F.3d at 844 (emphasis in original). Trying to avoid this clear result, Dominicana argues that:

9

"[T]he requirement in *Cat Charter* was for a 'reasoned award,' not for an award that states the reasons upon which it is based[, which is] . . . a more specific requirement." See Opposition [D.E. 27 at 18]. There is no basis whatsoever, much less any legal support, for Petitioner's contrived word play in its attempt to fashion a "more specific requirement" for a reasoned award. Nevertheless, relying on this flawed standard, Petitioner further argues that the Tribunal failed to provide reasoning for the "four chronologically distinct breaches" of contract it found the Dominican Republic had committed; for its conclusion that Petitioner only had one lease agreement that was countersigned as of April 29, 2016; and for its methodology to calculate lost profits. See Petition [D.E. 1 at 18–22]; Opposition [D.E. 27 at 20-25]. These arguments are also flawed.

A review of the Award shows that the Tribunal simply detailed four instances along a timeline of events in which the Dominican Republic exhibited "willful misconduct" to support its conclusion that Respondent had breached the Concession Agreement. See Award [D.E. 16-1 ¶¶ 743, 773, 782, 832, and 922]. Thus, the Tribunal did not conclude that the Dominican Republic had committed four distinct breaches of contract; rather, it found that Dominicana had failed to "indicate[] a specific time when the contractual breach materialized" and had not proved its alleged lost profits with the required certainty. Id. ¶¶ 922, 953. The Tribunal also explained that evidence presented by Dominicana's own expert contradicted Dominicana's claim that it had made payments on multiple lease agreements on land to develop the wind project and found that Dominicana had only one lease agreement that had been countersigned as of April 26, 2016, which is the date the CDEEE informed Dominicana that it would not be entering into a PPA with it. Id. ¶¶ 922–24, 933. Finally, the Tribunal adequately detailed its reasons for denying Petitioner's claim for lost profits by diligently applying Petitioner's three valuation methods to the facts of the case

10

and explaining that Petitioner's methods to prove lost future profits were impermissibly hypothetical under Dominican law because Petitioner never advanced the project beyond an "embryonic" state. See Award [D.E. 16-1 ¶ 951].

Thus, contrary to Petitioner's contention, the Tribunal issued a "reasoned award".

3. *The Award is due to be confirmed in its entirety.*

Given Petitioner's failure to establish its single defense against enforcement of the Award, among the seven enumerated in Article V of the New York Convention, the Award is due to be confirmed in its entirety, as requested by the Dominican Republic. See Sural (Barbados) Ltd., 2016 WL 4264061, at *3 (party seeking vacatur "'has the heavy burden of proving that one of the seven defenses applies.'") (citation omitted); Indus. Risk. Insurers, 141 F.3d at 1441(an "arbitral award must be confirmed unless [the movant] can successfully assert one of the seven defenses against enforcement of the award enumerated in Article V of the New York Convention.").

## RECOMMENDATION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that the Petition [D.E. 1] be DENIED and the Cross-Motion to Confirm Award [D.E. 24] be GRANTED. Accordingly, the undersigned further recommends that the Court CONFIRM the Award in its entirety.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district

court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 12th day of February, 2022.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Beth Bloom
    Counsel of Record